# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| 1ST CHOICE ADVANTAGE INSURANCE COMPANY, INC., § § § *Plaintiff,* § v. § KATHRYN SNEED, et al., § § *Defendants.* § | Civil Action No. 4:23-cv-1130 Judge Mazzant |

1ST CHOICE ADVANTAGE §
INSURANCE COMPANY, INC., §
 §
 *Plaintiff,* §
 § Civil Action No. 4:23-cv-1130
v. § Judge Mazzant
 §
KATHRYN SNEED, et al., §
 §
 *Defendants.* §

## MEMORANDUM OPINION AND ORDER

Pending before the Court is 1st Choice Advantage Insurance Company, Inc.'s Motion for Summary Judgment (Dkt. #21) and Defendants Black Bird Ranch's, the Bonaparte Family Living Trust's, Frank Bonaparte's, and Patricia Bonaparte's Motion for Summary Judgment (Dkt. #22). Having considered the Motions and the relevant pleadings, the Court finds that they should be **GRANTED in part** and **DENIED in part**.

### BACKGROUND

This is an insurance case. The issue before the Court is whether Plaintiff owes a duty to defend or indemnify Defendants in an underlying lawsuit.[1] Plaintiff contends that it has no obligation to do either for its insureds—Black Bird Ranch, the Bonaparte Family Living Trust, and its co-trustees Frank and Patricia Bonaparte (collectively, the "Bonaparte Defendants")—against claims brought in the underlying lawsuit alleging injuries to horses boarded at the Bonaparte Defendants' property (Dkt. #21 at pp. 4–5). The Bonaparte Defendants' argue, conversely, that

---

[1] *See Sneed v. Gibbs*, No. 4:23-cv-817-ALM, ECF No. 1 (E.D. Tex. Sept. 29, 2023).

Plaintiff does indeed owe a duty to defend, and assuming ripeness does not stand in the way, a duty to indemnify too.

Plaintiff issued two policies to the Bonaparte Defendants that are relevant to this dispute: a primary Agri-Business Farm and Ranch Policy ("the Primary Policy") and an "Umbrella/Excess" liability policy (the "Excess Policy"), effective from December 7, 2022 to December 7, 2023 (Dkt. #21 at pp. 3–4; Dkt. #21-2 at p. 1; Dkt. #22-2 at p. 1). The Bonaparte Defendants are also named defendants in the underlying lawsuit brought by Kathryn Sneed and Sneed Equestrian Estates, LLC (Dkt. #21 at p. 3; *see* Dkt. #22-4). That underlying suit further names as defendants persons who were contracted to train and care for Defendant Sneed's horses (the "Gibbs Defendants") and the owners of the first boarding property to which Defendant Sneed entrusted her horses (the "Schmidt Defendants") (Dkt. #22-4 at p. 6; Dkt. #23 at pp. 5–6).

The events giving rise to the underlying lawsuit began when Defendant Sneed retained the Gibbs Defendants to care for and train five horses initially boarded on the Schmidt Defendants' property (Dkt. #21 at pp. 3–4). Defendant Sneed ultimately transferred her horses from the Schmidt Defendants' property because they allegedly contracted "strangles," a contagious equine respiratory disease (Dkt. #21 at p. 4; Dkt. #23 at p. 6). On December 9, 2022, the Gibbs Defendants transported the horses to the Bonaparte Defendants' Black Bird Ranch (Dkt. #21 at p. 4; Dkt. #23 at p. 6). The petition in the underlying suit alleges that, while at Black Bird Ranch, one horse required euthanasia due to trauma and others suffered additional injuries and neglect (Dkt. #23 at pp. 6–7; Dkt. #22-4 at p. 9). The petition additionally alleges that the Bonaparte Defendants' did not inform Defendant Sneed of the disease outbreak or meet their standard of care, causing Defendant Sneed's alleged losses (Dkt. #21 at pp. 8–9; Dkt. #23 at pp. 6–7).

In this declaratory judgment action, Plaintiff seeks a ruling that it owes no duty to defend or indemnify the Bonaparte Defendants and Sneed Defendants under either policy (Dkt. #21 at p. 3).[2] Plaintiff argues that the policies limit "bodily injury" coverage to harm to persons and exclude "property damage" to personal property in the insured's "care, custody, or control" (Dkt. #21 at pp. 4–5). Plaintiff further alleges that the care, custody, or control exclusion encompasses the injuries alleged by Defendant Sneed in the underlying suit (Dkt. #21 at pp. 4–5). The Bonaparte Defendants oppose this reading, maintaining that the underlying pleadings allege property damage that at least potentially triggers coverage (Dkt. #23 at p. 13). They further allege that the exclusions do not categorically preclude Plaintiff's duty to defend (Dkt. #23 at p. 13).

On September 13, 2024, Plaintiff filed its Motion for Summary Judgment, asserting that it owes no duty to defend or indemnify because the claims exclusively involve damage to horses— (i.e., non-covered bodily injury) and fall squarely within the policies' care, custody, or control exclusions (Dkt. #21 at pp. 4–5). On September 15, 2024, the Bonaparte Defendants filed their own Motion for Summary Judgment petitioning the Court to determine (1) whether Plaintiff owes a duty to defend, (2) whether the duty to indemnify is ripe, and (3) if so, whether Plaintiff owes a duty to indemnify (Dkt. #22 at pp. 1–2). On September 27, 2024, the Bonaparte Defendants filed their Response to Plaintiff's Motion for Summary Judgment, arguing that the pleadings trigger the property damage coverage provision and that factual questions preclude summary judgment on the care, custody, and control exclusions (Dkt. #23 at pp. 13–15). On October 4, 2024, the Sneed Defendants filed their Response, joining the Bonaparte Defendants "in all parts of their

---

[2] Despite this position, Plaintiff is currently defending the Bonaparte Defendants in the underlying lawsuit pursuant to a "reservation of rights" preserving the option to later deny coverage and avoid paying for any judgment or settlement (Dkt. #21 at p. 3).

3

Motion for Summary Judgment and Response in Opposition to Plaintiff's Motion for Summary Judgment" (Dkt. #25 at pp. 1–2).[3] The Motions are now ripe for adjudication.

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is proper under Rule 56(a) of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Substantive law identifies which facts are material. *Id.* The trial court "must resolve all reasonable doubts in favor of the party opposing the motion [for summary judgment]." *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981).

The party seeking summary judgment bears the initial burden of informing the court of its motion and identifying "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" that demonstrate the absence of a genuine issue of material fact. FED. R. CIV. P. 56(c)(1)(A); *Celotex*, 477 U.S. at 323. If the movant bears the burden of proof on a claim or defense for which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Where the nonmovant bears

---

[3] For concision's sake, the Court will analyze each issue as it relates only to the Bonaparte Defendants but extend the results of the analysis to the Sneed Defendants. The Court believes that this is appropriate because the Sneed Defendants' arguments align with "all parts of [the Bonaparte Defendants'] Motion for Summary Judgment and Response . . . ." (Dkt. #25 at p. 1).

the burden of proof, the movant may discharge the burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248–49). A nonmovant must present affirmative evidence to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. Mere denials of material facts, unsworn allegations, or arguments and assertions in briefs or legal memoranda will not suffice to carry this burden. *See Solomon v. Hous. Corrugated Box Co.*, 526 F.2d 389, 396–97 (5th Cir. 1976). Rather, the Court requires "significant probative evidence" from the nonmovant to dismiss a request for summary judgment. *In re Mun. Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1982) (quoting *Ferguson v. Nat'l Broad. Co.*, 584 F.2d 111, 114 (5th Cir. 1978)). The Court must consider all of the evidence but "refrain from making credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

## ANALYSIS

Plaintiff's Motion presents three questions of law for the Court's analysis, namely:

1. Whether Plaintiff's duty to indemnify is ripe for consideration or must await resolution of the underlying lawsuit;

2. Whether Plaintiff owes a duty to defend or indemnify under the Primary Policy; and

3. Whether Plaintiff owes a duty to defend or indemnify under the Excess Policy.

(*See* Dkt. #21 at pp. 1–2; Dkt. #23 at pp. 1–2). The Court addresses each issue in turn below.

I.      **Ripeness of the Duty to Indemnify**

The Court begins by assessing whether the duty to indemnify is ripe for review. Plaintiff insists that it is (Dkt. #21 at p. 5). That is because the governing insurance policies do not—nor ever conceivably could—cover the allegations in the underlying lawsuit (Dkt. #21 at pp. 4–5). Thus, according to Plaintiff, there is no duty to defend (Dkt. #21 at pp. 4–5). By extension, under Plaintiff's interpretation of Texas law, the reasons negating any potential duty to defend similarly negate any potential duty to indemnify (Dkt. #21 at pp. 5–6; Dkt. #21 at pp. 10–11) (citing *Farmers Texas Cnty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 84 (Tex. 1997) (establishing that where the underlying pleadings affirmatively negate coverage, courts may adjudicate the duty to indemnify alongside the duty to defend).

The Bonaparte Defendants respond that it is premature to decide the duty to indemnify (Dkt. #23 at p. 10). While Texas law recognizes exceptions allowing a court to resolve the indemnity obligation at the same time as the duty to defend, they argue that those exceptions are narrow and apply only when the underlying pleadings demonstrate there is *no set of facts* under which the insurer could be liable to indemnify (Dkt. #23 at p. 10). That is not the case here, so the Bonaparte Defendants claim (Dkt. #23 at p. 10). Given that the underlying case may proceed to uncover factual findings relevant to indemnification, further discovery could reveal circumstances that would trigger coverage (Dkt. #23 at p. 10).

The Court agrees that the duty to indemnify is not yet ripe to consider. *See Copart*, 75 F.4th at 535. Under Texas law, the duty to defend and the duty to indemnify are distinct. *See D.R. Horton-Texas, Ltd. v. Markel Intern. Ins. Co., Ltd.*, 300 S.W.3d 740, 743–44 (Tex. 2009) (citations omitted). Under the "eight-corners" rule, courts determine whether a duty to defend exists solely by comparing the allegations in the underlying pleadings with insurance policy's terms. *Am.'s*

6

*Recommended Mailers Inc. v. Md. Cas. Co.*, 339 F. App'x 467, 469 (5th Cir. 2009) (citing *Gore Design Completions, Ltd. v. Hartford Fire Ins. Co.*, 538 F.3d 365, 369 (5th Cir. 2008)). By contrast, courts generally cannot determine the duty to indemnify until the underlying litigation concludes because it turns on the actual facts established in that proceeding. *See Liberty Mut. Fire Ins. Co. v. Copart of Connecticut, Inc.*, 75 4th 522, 535 (5th Cir. 2023).

Texas courts recognize a narrow exception allowing an early determination of the duty to indemnify only when the facts alleged in the underlying petition could, under no circumstances, lead to a result that would require the insurer to indemnify. *See Farmers Texas Cnty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 84 (Tex. 1997). Unless the same reasons that negate the duty to defend also conclusively negate the possibility of indemnification, courts should refrain from ruling on the duty to indemnify until the liability suit concludes. *Copart*, 75 F.4th at 536 (characterizing "summary judgment for [the insurer as] . . . both premature and incorrect" because the duty to indemnify might still depend on later-developed facts); *Liberty Mut.*, 75 F.4th at 536.

Here, the Court concludes that additional factual development in the underlying litigation could affect whether the policies' exclusions ultimately apply. For instance, factual findings could clarify the Bonaparte Defendants' actual degree of care, custody, or control over the horses or reveal novel circumstances relevant to coverage. Because the underlying lawsuit remains pending and could produce findings material to indemnification, the Court concludes that it is premature to adjudicate the duty to indemnify at this stage. *See Copart*, 75 F.4th at 536. Accordingly, the question of whether Plaintiff owes a duty to indemnify the Bonaparte Defendants and Sneed Defendants is not yet ripe. *See Copart*, 75 F.4th 522. Plaintiff's Motion should therefore be **DENIED without prejudice** pending further factual development in the underlying suit.

## II.     Primary Policy Coverage

Having established that the Court cannot evaluate whether a duty to indemnify exists, the Court will now assess whether the facts as alleged trigger a duty to defend under the Primary Policy or Excess Policy. *See Zurich Am. Ins. Co. v. Nokia*, 268 S.W.3d 487, 491 (Tex. 2008); *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 829 (Tex. 1997) (confirming that the duty to defend is ripe because it "is not affected by facts ascertained before suit, developed in the course of litigation, or by the ultimate outcome of the suit"). The Court begins with the Primary Policy.

### A.     Duty to Defend

To determine whether Plaintiff owes a duty to defend, courts apply Texas's eight-corners approach, which compares the underlying petition's allegations with the insurance policy's language, all while disregarding extrinsic evidence. *Zurich*, 268 S.W.3d at 491. The facts as alleged in the underlying petition trigger the duty to defend if, when taken as true, they potentially state a claim covered by the policy. *Heyden Newport Chem. Corp. v. S. Gen. Ins. Co.*, 387 S.W.2d 22, 26 (Tex. 1965). Any doubt is generally resolved in favor of the insured. *See King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex. 2002). Plaintiff argues that it owes no duty to defend because the Bonaparte Defendants' alleged facts do not trigger the bodily injury provision, and to the extent that they trigger the property damage provision, the care, custody, or control exclusion negates any resulting duty. As discussed below, the Court agrees.

#### 1.     Coverage Under the Bodily Injury Provision

Plaintiff argues that the underlying lawsuit does not implicate bodily injury coverage under the Primary Policy because the term contemplates only injury to human beings (Dkt. #21 at p. 4; *see* Dkt. #22-1 at p. 71). Specifically, the Primary Policy defines bodily injury as "bodily harm to a ***person*** and includes sickness, disease, or death" (Dkt. #21 at p. 4; *see* Dkt. #22-1 at p. 71) (emphasis

added). The underlying allegations, however, exclusively concern injuries to horses—animals owned by Defendant Sneed—not to any persons (Dkt. #21 at pp. 4–5; Dkt. #23 at pp. 5–8)

The Bonaparte Defendants do not meaningfully dispute this textual limitation (*See* Dkt. #23 at pp. 12–14) (focusing on whether the underlying petition's allegations trigger coverage under the Primary Policy's property damage provisions). That is understandably so; the Primary Policy's plain language expressly limits bodily injury coverage to injuries sustained by "a person" (Dkt. #21 at pp. 4–5; Dkt. #23 at pp. 5–8). Consistent with this interpretation, the Court concludes that the underlying petition's assertions regarding damage to a horse do not implicate the bodily injury coverage provision. *See Great Am. Ins. Co. v. Primo*, 512 S.W.3d 890, 892 (Tex. 2017) ("[W]e assign terms their ordinary and generally accepted meaning unless the contract directs otherwise."). The reason is simple: a horse is not a person, and vice versa. Thus, Plaintiff owes no duty to defend either the Bonaparte Defendants or Sneed Defendants in the underlying case. *See id*.

### 2. Coverage Under the Property Damage Provision

Next, the Court considers whether the allegations in the underlying lawsuit trigger coverage under the Primary Policy's property damage provision. The Primary Policy defines property damage as:

1. Physical injury or destruction of tangible property; or

2. The loss of use of tangible property whether or not it is physically damaged. Loss of use is deemed to occur at the time of the occurrence that caused it.

(*See* Dkt. #23 at pp. 12–13; Dkt. #22-1 at p. 160).

Rather than explicitly disclaim harm to Defendant Sneed's horses as property damage within the meaning of the Primary Policy, Plaintiff argues that "to the extent that any 'property damage' is alleged in the [underlying] Lawsuit it falls within the 'care, custody, or control'

9

exclusion" (Dkt. #21 at p. 7). The Bonaparte Defendants, by contrast, contend that damage to the horses is property damage because horses are tangible property under Texas law (Dkt. #23 at p. 13). In support, the Bonaparte Defendants cite *Damron v. State*, which in affirming a criminal conviction for horse theft, stated that "this court and all courts know that a horse is corporeal personal property" (Dkt. #23 at pp. 13–14). 27 S.W. 7 (Tex. Crim. App. 1894).

The Court is not fully persuaded that damage to a horse amounts to property damage within the meaning of the Primary Policy. *Damron* is distinguishable from this case in that it speaks to a criminal theft statute's concept of property, not to that of any insurance contract. *See Damron*, 27 S.W. at 8. To justify this interpretation, the Bonaparte Defendants import the concept of a horse as personal property from the criminal context into the civil context. In doing so, they rely on a case more than a century removed from modern insurance policy language and caselaw. The Court will not strain to reach the same conclusion. That said, the Court cannot wholly discount their interpretation; categorizing horses as tangible property in a general legal sense is not so unreasonable that Plaintiff's proposed interpretation, by comparison, is unquestionably correct.

When, as here, both parties' constructions present reasonable interpretations of the Primary Policy's language, the Court must conclude that the specific policy provision in question is ambiguous (Dkt. #23 at p. 12). *See Grain Dealers Mut. Ins. Co. v. McKee*, 943 S.W.2d 455, 458 (Tex. 1997); *Balandran v. Safeco Ins. Co. of Am.*, 972 S.W.2d 738, 741 (Tex. 1988). In such cases, the Court "must resolve the uncertainty by adopting the construction that most favors the insured . . . even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent." *Nat'l Union Fire Ins. Co. of Pittsburgh v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex. 1991). Thus, the Court will construe the property damage provision as the Bonaparte

Defendants' suggest. *See id.* At this stage, the Court finds that damage to horses qualifies as property damage under the Primary Policy, but as discussed below, does not create a duty to defend because the care, custody, or control exclusion precludes any resulting liability.

      **B.**      **Applicability of the Care, Custody, or Control Exclusion**

Even assuming that the Primary Policy's property damage provision covers Defendant Sneed's horses, the Court finds that such coverage falls within the care, custody, and control exclusion negating the duty to defend. Plaintiff argues that even if the Court could read the underlying allegations to trigger the Primary Policy's property damage coverage, the policy's care, custody, or control exclusion would independently bar such coverage (Dkt. #21 at pp. 4–5). That exclusion provides that the insurance does not "pay for property damage to either business or non-business personal property in the care, custody, or control of the insured" (Dkt. #21 at p. 7; Dkt. #22-1 at p. 166). Plaintiff argues that the exclusion applies to the Bonaparte Defendants because the underlying petition alleges that Defendant Sneed's horses were moved to Black Bird Ranch, which is owned and operated by the Bonaparte Defendants, and remained there under the Bonaparte Defendants' supervision at the time the alleged injuries occurred (Dkt. #21 at pp. 7–9.)

The Bonaparte Defendants respond that the underlying allegations are not so clear-cut; the underlying petition also asserts that Defendant Sneed specifically contracted with the Gibbs Defendants to provide day-to-day care and training for the horses (Dkt. #23 at pp. 14–15.) This arrangement ostensibly placed the horses under the care, custody, or control of the Gibbs Defendants rather than the Bonapartes (Dkt. #23 at p. 15) ("[T]he contract between Sneed and the Gibbs Defendants specifies that the Horses were under the 'care, custody, and control' of the Gibbs Defendants – the Gibbs Defendants were directly responsible for caring for, feeding, and training the Horses, not the Bonaparte Defendants."). If true, the exclusion would not conclusively bar

11

coverage at the duty-to-defend stage (Dkt. #23 at p. 15). While the precise degree and nature of control exercised by each defendant is unclear, the Bonaparte Defendants suggest this ambiguity is precisely what gives rise to Plaintiff's duty to defend (*See* Dkt. #23 at p. 15).

The Court finds that the underlying petition places Defendant Sneed's horses sufficiently in the care, custody, or control of the Bonaparte Defendants to trigger the exclusion. The relevant inquiry under Texas's eight-corners rule focuses strictly on the allegations in the underlying petition, not on hypothetical scenarios or extrinsic facts. *Am.'s Recommended Mailers*, 339 F. App'x at 469. Here, the petition alleges that the horses were relocated on December 9, 2022, to Black Bird Ranch, and that while on this property the horses suffered injuries, neglect, and even death due ranch conditions (Dkt. #21 at p. 4; Dkt. #23 at pp. 6–8; Dkt. #22-4 at p. 7). The allegations do not frame the horses as simply being present on the premises without control by the Bonapartes; instead, they assert that the Bonaparte Defendants were directly responsible for managing the property should have notified Defendant Sneed of the strangles outbreak (Dkt. #22-4 at pp. 7–8). In effect, the petition alleges that the horses were within the Bonaparte Defendants' sphere of responsibility and control (*See, e.g.*, Dkt. #22-4 at pp. 7–8; Dkt. #22-4 at pp. 14–15).

The Bonaparte Defendants' argument that the horses were primarily under the care of the Gibbs Defendants does not alter this conclusion (*See* Dkt. #23 at p. 15). The underlying petition does not disclaim the Bonaparte Defendants' control or duties (*See generally* Dkt. #22-4). Rather, it ties the injuries to Black Bird Ranch's negligence and oversight (Dkt. #22-4 at pp. 7–8). Under the eight-corners rule, the Court cannot speculate about possible factual distinctions that might ultimately reduce the Bonapartes' degree of control or shift blame entirely to the Gibbs Defendants. *Recommended Mailers*, 339 F. App'x at 469 (noting a court is "not permitted to read facts into the

12

pleadings or imagine factual scenarios that might trigger coverage"). Even accepting the Bonaparte Defendants' framing, then, the underlying allegations still place the horses predominantly under the Bonapartes' care, custody, or control. That is sufficient to trigger the exclusion (*See, e.g.*, Dkt. #22-4 at pp. 6–8, 13–14). As a result, the Court finds that the Primary Policy bars coverage of property damage alleged by the Bonaparte Defendants and Sneed Defendants under the pleaded facts. *See Primo*, 512 S.W.3d at 892. Plaintiff therefore owes no duty to defend under the Primary Policy on this ground.

### C.  Duty to Indemnify

As previously discussed regarding ripeness, the Court finds that any determination on Plaintiff's duty to indemnify under the Primary Policy is premature. *Copart*, 75 F.4th at 535; *see supra* Section I. Because factual development in the underlying lawsuit may bear on whether an indemnity obligation is ultimately triggered, the Court declines to reach the indemnification issue as to the Primary Policy at this stage (*See* Dkt. #23 at p. 10) (citing *Copart*, 75 F.4th at 535).

Accordingly, the Court finds that the underlying petition's allegations do not impose a duty upon Plaintiff to defend the Bonaparte Defendants or Sneed Defendants under the bodily injury or property damage provisions of the Primary Policy. The Court reserves any ruling on the duty to indemnify pending further factual development. The Court will therefore **GRANT in part** and **DENY in part** Plaintiff's Motion on this ground.

## III.  Excess Policy Coverage

Having settled that the Primary Policy does not create a duty to defend, the Court now turns to whether such a duty exists under the Excess Policy. Plaintiff seeks summary judgment that

it owes no duty to defend[4] under the excess liability policy, effective for the same policy period as the Primary Policy (Dkt. #21 at p. 4). In support, Plaintiff argues that the Excess Policy either (1) follows form to the Primary Policy and therefore does not create broader coverage obligations, or (2) independently contains similar insuring provisions and exclusions—including a care, custody, or control exclusion—that likewise bar coverage (Dkt. #21 at pp. 10–14.) In essence, Plaintiff acknowledges that the Excess Policy creates duties to defend or indemnify only insofar as the Primary Policy does. And, of course, Plaintiff maintains that neither duty exists.

The Bonaparte Defendants do not advance separate arguments specific to the Excess Policy. Instead, they generally contend that if the Primary Policy potentially affords coverage, then so does the Excess Policy (Dkt. #23 at p. 15) ("All discussions and arguments as stated above are incorporated herein as to the Umbrella/Excess Policy."). They maintain that factual development should proceed before the Court determines the question of whether a duty to indemnify exists (Dkt. #23 at pp. 10, 14–15).

The Court concludes that, as with the Primary Policy, the Excess Policy does not create a duty to defend. *See supra* Section II.A. The Excess Policy incorporates the same general liability framework and contains materially identical definitions of bodily injury and property damage as the Primary Policy (Dkt. #21 at p. 5) (noting that both Excess Policy's coverage provisions at least "in relevant part . . . contain[] the same provisions" as the Primary Policy, if they do not completely "follow form to the Primary Policy"). The Excess Policy also contains substantively identical care, custody, or control exclusions (Dkt. #21 at p. 5). For the same reasons the Court found there was

---

[4] The Bonaparte Defendants also contend that the Excess Policy does not create a duty to indemnify (Dkt. #23 at p. 16). For the reasons stated above, however, the Court will not address that issue, as it is not yet ripe. *See Copart*, 75 F.4th at 536; *supra* Section I.

no duty to defend under the Primary Policy—namely that the allegations do not involve bodily injury to a person and are, to the extent that they involve property damage, barred by the care, custody, or control exclusion—the Court finds there is likewise no duty to defend either the Bonaparte Defendants or the Sneed Defendants under the Excess Policy. *See supra* Sections II.A–II.B. The question of whether a duty to indemnify exists under the Excess Policy is likewise not yet ripe. *Copart*, 75 F.4th at 535. Thus, Plaintiff's Motion should be **DENIED without prejudice** on this ground, pending further factual development.

## CONCLUSION

It is therefore **ORDERED** that 1st Choice Advantage Insurance Company, Inc.'s Motion for Summary Judgment (Dkt. #21) and Defendants Black Bird Ranch's, the Bonaparte Family Living Trust's, Frank Bonaparte's, and Patricia Bonaparte's Motion for Summary Judgment (Dkt. #22) are hereby **GRANTED in part** and **DENIED in part**.

It is further **ORDERED** that the Motions are **GRANTED** as to the absence of a duty to defend under both the primary Agri-Business Farm and Ranch Policy and the Umbrella/Excess liability policy. The Court hereby declares that Plaintiff owes no duty to defend the Bonaparte Defendants or the Sneed Defendants in the underlying lawsuit.

It is further **ORDERED** that the Motions are **DENIED without prejudice** as to Plaintiff's duty to indemnify under both the primary Agri-Business Farm and Ranch Policy and the Umbrella/Excess liability policy. The duty to indemnify either the Bonaparte Defendants or the Sneed Defendants is not yet ripe for adjudication and may be revisited upon further factual development in the underlying lawsuit.

**IT IS SO ORDERED.**

**SIGNED this 11th day of July, 2025.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE